# EXHIBIT
# A

## SETTLEMENT AGREEMENT AND
## MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("**Agreement**") is entered into by and between Namrata Pereira ("**Pereira**"), Denese Faulkner ("**Faulkner")**,** Sarah Hilbert ("**Hilbert**") and John Edward Widener II ("**Widener**") (collectively "**Plaintiffs**") and Brand New Start Treatment Centers, LLC, Brand New Start Treatment Center – Paulding, Georgia Treatment Center, LLC, Woodstock Treatment Center, LLC and Walton County Treatment Center LLC, and Sunjay Sood and Nalini Singh (collectively "**Brand New Start**" or "**Defendants**"). Plaintiffs and Brand New Start are referred to collectively herein as ("**the Parties**").

WHEREAS, Plaintiffs formerly worked for Brand New Start as counselors (which is defined to include, but is not limited to, the following job titles: Counselor, Clinical Supervisor, Program Director, and Clinical Director) and were paid on an hourly basis during the relevant time period;

WHEREAS, on March 26, 2019, Pereira and Faulkner filed the lawsuit *Namrata Pereira and Denese Faulkner v. Brand New Start Treatment Centers, LLC, Brand New Start Treatment Center – Paulding, Georgia Treatment Center, LLC, Woodstock Treatment Center, LLC and Walton County Treatment Center LLC, Sunjay Sood and Nalini Singh,* Civil Action No. 1:19-cv-01342-JPB in the Northern District of Georgia (the "**Action**" or "**Lawsuit**") asserting claims for alleged unpaid overtime compensation under the Fair Labor Standards Act ("**FLSA**"). Thereafter, on April 15, 2019 and April 17, 2019, Hilbert and Widener, respectively, filed Consent to Join forms to participate in the Lawsuit.  Plaintiffs represent that no other charges, actions or claims are pending on Plaintiffs' behalf, other than those set forth in this paragraph;

WHEREAS, Brand New Start contends that Plaintiffs were properly paid all overtime wages, are not owed any overtime wages, and denies that it owes Plaintiffs any alleged unpaid overtime or any other amount Plaintiffs are claiming;

WHEREAS, Brand New Start denies any and all claims asserted in this Action by Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever;

WHEREAS, to avoid the uncertainty, burdens, and expense of further litigation, and without admission or finding of liability or wrongdoing on the part of any party, such being expressly denied by all Parties, the Parties desire fully and finally to settle and resolve the Action, all monetary damages and other relief of any nature whatsoever alleged in or sought by the Action, and any and all other FLSA, employment, or wage-related claims or disputes, or any other type of claim that has been made or could have been made by or on behalf of any party against the other relating to conduct or events occurring at any time prior to and including the date on which this Agreement is executed; and

WHEREAS, the Parties recognize that a bona fide dispute remains as to liability, if any, for attorneys' fees and costs and that this Agreement represents a bona fide compromise of all claims by the Parties for attorneys' fees, expenses and costs, and that it was negotiated at arms-length by counsel for the parties.

NOW, THEREFORE, in consideration of the promises contained in this Agreement and other good and valuable consideration, the legal adequacy and sufficiency of which the Parties acknowledge, it is agreed as follows:

1. **Non-Admission.** This Agreement and compliance with this Agreement shall not be construed as an admission by any Party of any liability whatsoever, or as an admission by any Party of any violation of (a) the rights of the other Party or any other person or entity, or (b) any order, law, statute, duty, or contract whatsoever against any person or entity. Brand New Start specifically disclaims any liability to Plaintiffs or any other person for any alleged violation of the rights of Plaintiffs or any person, or for any alleged violation of any order, law, statute, duty, or contract on the part of Brand New Start or any of its members, employees, agents, officers, shareholders, representatives or and any persons acting by, through, under, or in concert with any of them.

2. **Court Approval and Dismissal of Lawsuit with Prejudice.** In exchange for the consideration described below, Plaintiffs agree to dismiss the Lawsuit and all claims therein with prejudice. The Parties agree that they will submit this Agreement to the Court for approval and jointly move the Court for approval of this Agreement and the retention of jurisdiction over any disputes that may arise under this Agreement, such that the Court may entertain further proceedings, enter orders, and issue such writs, including entry of the Parties' negotiated Consent Judgment, as the Court may deem necessary or advisable. Once Plaintiffs have received the Initial Settlement Payment (defined below) from Defendants, they shall file with the Court a Stipulation of Dismissal with Prejudice and Retention of Jurisdiction, dismissing the Lawsuit in its entirety.  If the Court does not approve the settlement of the FLSA claims, the Parties agree to negotiate in good faith any modification of this Agreement, other than with respect to monetary terms and the release of claims, to accommodate the basis upon which the Court has refused to approve this Agreement.

3. **Settlement Consideration.**

   a. **Payment to Plaintiffs & Other Consideration:** Within the time and in the manner specified in subparagraph (b) below, Brand New Start will pay to Plaintiffs the gross amount of Two Hundred and Twenty Thousand Dollars and No Cents ($220,000.00) (the "**Gross Settlement Proceeds**"), which Plaintiffs expressly represent satisfies any and all claims they respectively have for damages against Brand New Start. Plaintiffs further represent that, with payment of the Gross Settlement Proceeds, they will be paid all money conceivably due to them and that they will be fully compensated for all hours worked. The Settlement Proceeds will be paid as set forth in Paragraph 3(b) below.  Plaintiffs and their attorney agree to provide completed W-9 forms as a condition of issuance of the Settlement Proceeds.

   b. **Timing and Manner of Payments and Conditions Precedent:**

      (1)    Within ten (10) business days after the occurrence of the last of the following required conditions precedent: (a) the Court approves this Agreement; and (b) Brand New Start receives the required tax forms from

Plaintiffs and their attorney, Brand New Start shall pay Plaintiffs the lump sum of Forty Thousand Dollars and No Cents ($40,000.00) (the "**Initial Settlement Payment**"). Payment of the foregoing sum shall be made by check payable as follows:

(i) A gross Initial Settlement Payment in the amount of $6,600.00 ("**Pereira Initial Portion**"), paid to Pereira as follows: (A) one-half of the Pereira Initial Portion paid to Pereira as liquidated damages not subject to withholding and reported to Pereira on IRS form 1099; (B) one-half of the Pereira Initial Portion paid to Pereira as wages subject to withholding and reported to Pereira on IRS form W-2.

(ii) A gross Initial Settlement Payment in the amount of $6,240.00 ("**Faulkner Initial Portion"),** paid to Faulkner as follows: (A) one-half of the Faulkner Initial Portion paid to Faulkner as liquidated damages not subject to withholding and reported to Faulkner on IRS form 1099; (B) one-half of the Faulkner Initial Portion paid to Faulkner as wages subject to withholding and reported to Faulkner on IRS form W-2.

(iii) A gross Initial Settlement Payment in the amount of $5,760.00 ("**Hilbert Initial Portion**"), paid to Hilbert as follows: (A) one-half of the Hilbert Initial Portion paid to Hilbert as liquidated damages not subject to withholding and reported to Hilbert on IRS form 1099; (B) one-half of the Hilbert Initial Portion paid to Hilbert as wages subject to withholding and reported to Hilbert on IRS form W-2.

(iv) A gross Initial Settlement Payment in the amount of $5,400.00 ("**Widener Initial Portion**"), paid to Widener as follows: (A) one-half of the Widener Initial Portion paid to Widener as liquidated damages not subject to withholding and reported to Widener on IRS form 1099; (B) one-half of the Widener Initial Portion paid to Widener as wages subject to withholding and reported to Widener on IRS form W-2.

(v) An Initial Settlement Payment made payable to "**Moeller Barbaree LLP**" in the amount of $16,000.00, from which no deductions shall be made. The Initial Settlement Payment set forth in Paragraphs 3(b)(1)(i)-(v) will be made in five separate checks delivered to Plaintiffs' attorneys at Moeller Barbaree LLP, 181 14th Street NE, Suite 401, Atlanta, GA 30309.

(2) In addition to the Initial Settlement Payment, Brand New Start shall pay to Plaintiffs and their counsel the sum of One Hundred Eighty Thousand

Dollars and No Cents ($180,000.00) in eighteen (18) equal installments in the gross amount of Ten Thousand Dollars and No Cents ($10,000.00) each (the "**Installment Settlement Payments**"), which shall be payable monthly to be received by the twentieth (20th) day of the month in which the payment is due. The first Installment Settlement Payment shall be due the month after the Initial Settlement Payment referenced in Paragraph 3(b)(i)-(v) is made. For example, if the Initial Settlement payment is made in August, the first Installment Payment shall be due on September 20th. Payment of the foregoing eighteen (18) equal Installment Settlement Payments shall be made monthly via separate payments as follows:

(i)     A gross monthly Installment Settlement Payment in the amount of $1,650.00 ("**Pereira Installment Portion**"), made via direct deposit to Pereira as follows:   (A) one-half of the Pereira Installment Portion paid to Pereira as liquidated damages not subject to withholding and reported to Pereira on IRS form 1099; (B) one-half of the Pereira Installment Portion paid to Pereira as wages subject to withholding and reported to Pereira on IRS form W-2.

(ii)    A gross monthly Installment Settlement Payment in the amount of $1,560.00 ("**Faulkner Installment Portion**"), made via direct deposit to Faulkner as follows:   (A) one-half of the Faulkner Installment Portion paid to Faulkner as liquidated damages not subject to withholding and reported to Faulkner on IRS form 1099; (B) one-half of the Faulkner Installment Portion paid to Faulkner as wages subject to withholding and reported to Faulkner on IRS form W-2.

(iii)   A gross monthly Installment Settlement Payment in the amount of $1,440.00 ("**Hilbert Installment Portion**"), made via direct deposit to Hilbert as follows:   (A) one-half of the Hilbert Installment Portion paid to Hilbert as liquidated damages not subject to withholding and reported to Hilbert on IRS form 1099; (B) one-half of the Hilbert Installment Portion paid to Hilbert as wages subject to withholding and reported to Hilbert on IRS form W-2.

(iv)    A gross monthly Installment Settlement Payment in the amount of $1,350.00 ("**Widener Installment Portion**"), made via direct deposit to Widener as follows:   (A) one-half of the Widener Installment Portion paid to Widener as liquidated damages not subject to withholding and reported to Widener on IRS form 1099; (B) one-half of the Widener Installment Portion paid to Widener as wages subject to withholding and reported to Widener on IRS form W-2.

(v)     Brand New Start will use the direct deposit information previously provided to it by Plaintiffs unless Plaintiffs provide written notice in writing to Brand New Start's counsel in accordance with Section 3(b)(3) not less than ten (10) days prior to an Installment Settlement Payment due date.

(vi)    A monthly Installment Settlement Payment made via a check payable to "Moeller Barbaree LLP" in the amount of $4,000.00, from which no deductions shall be made. Each Installment Settlement Payment to Moeller Barbaree LLP will be mailed to Plaintiffs' attorney at Moeller Barbaree LLP, 181 14th Street NE, Suite 401, Atlanta, GA 30309.

(3)    In the event of any default by Brand New Start in the payment of the Initial Settlement Payments or the Installment Settlement Payments (whether by failure to timely make the payments or in the event any check or deposit is unable to be redeemed by Plaintiffs or their attorney due to insufficient funds), Plaintiffs shall provide Brand New Start's attorney written notice of the default. This notice shall be made to Rachael Lee Zichella and Michael Eric Ross, at Taylor English Duma LLP, 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339 and rzichella@taylorenglish.com and mross@taylorenglish.com. The Installment Settlement Payments shall be deemed late, or in default, in the event that such payments are not received by the twenty-fifth (25th) day of the month in which the payments are due. Upon notice of default, Brand New Start shall have ten (10) calendar days from the date of the notice to cure the default. If Brand New Start fails to cure the default within ten (10) calendar days of receipt of the written notice by Brand New Start's attorney, a Consent Judgment, in the form attached hereto as Exhibit 1, may be entered immediately upon the expiration of the ten (10) day period to cure against all Defendants, jointly and severally, in the amount of $220,000.00, less the amount of any Gross Settlement Proceeds already paid under the terms of this Agreement.

**4.**    **Mutual General Release.** In consideration of the promises and payments set forth herein, and as a material inducement for Brand New Start and Plaintiffs to enter into this Agreement, Plaintiffs and Brand New Start agree as follows (the "**Release**"):

(a)    Plaintiffs, on behalf of themselves individually and all of their respective heirs, executors, assigns, agents, representatives, and attorneys (the "**Plaintiff Releasors**") hereby completely and unconditionally release, acquit, and forever discharge Brand New Start and all of their parents, subsidiaries, affiliates, predecessors, successors, assigns, members, owners, shareholders, general or limited partners, joint venturers, directors, officers, employees, former employees, agents, representatives, and attorneys, and any persons acting by, through, under, or in concert with any of them, and all successors and assigns thereof (collectively, the "**Brand New Start Releasees**"), from any and all claims, charges, complaints,

demands, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, entitlements, costs, losses, debts, and expenses (including attorneys' fees and legal expenses), of any nature whatsoever, known or unknown, that any Plaintiff now has, had, or may hereafter claim to have had against Brand New Start and/or the other Brand New Start Releasees, individually or collectively, by reason of any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to the date of this Agreement, provided that nothing herein shall prevent Plaintiffs from seeking access to the Court for entry of the Consent Judgment or bringing suit to enforce the terms of this Agreement.

(b)     Specifically included without limitation in this Release is a knowing and voluntary waiver and release of all claims Plaintiffs now have, or had, or may hereafter claim to have against the Brand New Start Releasees under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; the Employee Retirement Income Security Act of 1974; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act of 1970 Act; the Georgia Equal Employment for Persons with Disabilities Code, the Georgia Equal Pay for Equal Work Act and the Common Day of Rest Act; any and all claims based on "public policy"; any and all claims under any federal, state, or local laws pertaining to employment, employment compensation, or employment benefits; personal injury; injury to reputation; injury to property; intentional torts; negligence; wrongful termination; constructive discharge; retaliation; discrimination; harassment; breach of contract; and any and all claims for recovery of lost wages or other compensation, liquidated damages, front pay, compensatory and/or punitive damages, attorneys' fees, injunctive or equitable relief, or any other form of relief, and any and all other claims of any kind based on any federal, state, or local constitution, statute, law, rule, regulation, judicial doctrine, contract, or common law, or other theory arising out of any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to the date of this Agreement.

(c)     Plaintiffs further acknowledge that this Release extends also to claims that they do not know or suspect to exist in their favor at the time of executing this Agreement, which if known might have materially affected their respective decisions to execute this Agreement. Each Plaintiff hereby knowingly and voluntarily waives and relinquishes all rights and benefits that Plaintiff has or may have under applicable law with respect to such claims. Other than the Lawsuit, each Plaintiff represents and warrants that Plaintiff has not filed or caused to be filed any demand for arbitration, lawsuit, complaint, or charge with respect to any claim this Release purports to waive. The Parties mutually waive all appeal rights with regard to any claims in the Lawsuit. Each Plaintiff further agrees not to reinstate any claims in the Lawsuit, or initiate or pursue any other claims, complaints, or proceedings for damages or other relief against Brand New Start or the Brand New Start Releasees in any local, state, or federal court or agency, based upon, arising from, or in any way related to any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to the date of this Agreement, including

6

but not limited to, any matters related to Plaintiff's employment with Brand New Start or the Brand New Start Releasees; provided, however, that this covenant not to sue does not apply to administrative charges or complaints filed with any government agency.

(d)     The Release does not waive: claims for vested benefits under ERISA-covered employee benefit plans; claims that may arise after Plaintiffs each sign this Agreement; and claims that cannot be released by private agreement. Nothing in this Agreement shall be construed to prevent any Plaintiff from filing a charge or complaint with or from participating in an investigation or proceeding conducted by any federal, state or local agency charged with enforcement of employment laws. Each Plaintiff understands and acknowledges that Plaintiff has waived and released Plaintiff's right to recover damages or to be awarded any other individual relief in any such administrative proceeding, as well as Plaintiff's right to recover in any action brought on Plaintiff's behalf by any other party, including, but not limited to, any federal, state, or local agency. Nothing herein shall prevent any Plaintiff from bringing suit to enforce the terms of this Agreement, and nothing in this Section waives or limits Plaintiff's right to apply for or recover a whistleblower award under Section 21F of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-6, or to participate in any Securities Exchange Commission investigation.

(e)     Brand New Start,  on behalf of its parents, subsidiaries, affiliates, predecessors, successors, assigns, owners, shareholders, general or limited partners, joint venturers, directors, officers, employees, former employees, agents, representatives, and attorneys, and any persons acting by, through, under, or in concert with any of them, and all successors and assigns thereof (collectively, the "**Brand New Start Releasors**"), completely and unconditionally release and forever discharge each Plaintiff, including his/her respective attorneys, agents, servants, representatives, predecessors and successors in interest, and assigns (collectively, the "**Plaintiff Releasees**"), from any and all claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, whether for compensatory or punitive damages, and whether known or unknown, that the Brand New Start Releasors now have or that may hereafter accrue or otherwise be acquired against any Plaintiff Releasees by reason of any matter, cause, or thing whatsoever, from the beginning of time to the date of this Agreement, including but not limited to any claims for costs, expenses or attorneys' fees in connection with this matter, provided that nothing herein shall prevent Brand New Start from bringing suit to enforce the terms of this Agreement.

(f)     Each of the Parties represents and warrants that it has not assigned, sold, or otherwise transferred any of the claims released above to any other person or entity, and agrees to indemnify and hold harmless the other Parties and any other adversely affected releasee for any breach of this representation and warranty.

7

5.   **No Workers' Compensation Claims.**  Each Plaintiff represents and warrants on their own behalf that Plaintiff is aware of no facts (including any injuries or illnesses) that might lead Plaintiff to file a Workers' Compensation claim against Brand New Start**.**

6.   **No Future Employment.**  Each Plaintiff agrees and recognizes on their own behalf that Plaintiff's employment relationship with Brand New Start has forever ended. Each Plaintiff hereby understands and agrees that Plaintiff will not be re-employed by Brand New Start in the future and that Plaintiff will never knowingly apply to Brand New Start for any job or position in the future. Each Plaintiff acknowledges that this Agreement will constitute a complete and final reason for any subsequent denial of employment or any contractual relationship between the parties, and that this Agreement may be offered as a complete defense to any charge, complaint, claim, or cause of action for such denial.

7.   **Non-Disclosure**.  Although this Agreement will itself be a public record, Plaintiffs agree that neither they nor their counsel will disclose this Agreement or any of its terms and conditions (except to enforce this Agreement or as may be required by law), including by publicizing the settlement in any way (including on any social media platform) or disclosing it to any third party, without the express written agreement of Brand New Start, or unless required to do so by law.  Each Plaintiff agrees not to disclose the terms or amount of this Agreement, nor the substance of the negotiations leading to this Agreement, to any person or entity, other than to Plaintiff's spouse, personal counsel or attorney, personal accountants, or personal tax preparer, if any. Any such disclosure to such persons will be made only if the relevant person must have such information for the performance of such person's responsibilities and after first securing from such persons their agreement to adhere to the terms of this confidentiality provision. To the extent required by law or applicable regulation, Plaintiffs may also disclose the provisions of this Agreement to the appropriate taxing authorities or to the Court should enforcement of this Agreement be required. Plaintiffs agree that, if questioned about this settlement, this Agreement, the disposition of claims, or any other information made confidential by this provision, each Plaintiff will only say: "The matter has been resolved."  It shall not be a breach of this Agreement for Plaintiff's counsel to disclose the terms of this agreement to its attorneys, accountants, accounting personnel, tax preparers, or any taxing or governmental authority as required by law.

If any Plaintiff believes the disclosure of this Agreement, or any testimony concerning it, is required by law, that Party shall immediately, and before any such disclosure is made, notify counsel for Brand New Start in writing pursuant to the notice provisions below in Section 3(b)(3) so that Brand New Start may determine whether to attempt to prevent such disclosure, to intervene in any proceeding, or to seek a protective order to maintain confidentiality following such disclosure, and to take any reasonable steps it deems necessary to delay such disclosure until Brand New Start has had an opportunity to intervene and prevent such disclosure.

8.   **Non-Disparagement.**

(a)     Plaintiffs agree that they will not disparage Brand New Start or any Brand New Start Releasee or issue any statement or communication, written or otherwise, that reflects adversely on Brand New Start or any Brand New Start Releasee, encourages any adverse action against Brand New Start or any Brand New Start Releasee, or is defamatory of Brand New Start or any Brand New Start Releasee. This includes any statement to or response to an inquiry by any member of the press or media, whether written, oral, or otherwise, and includes, without limitation, statements transmitted by electronic mail, text message, social media platform, or by any other means of communication, publication, or dissemination.

(b)     Brand New Start agrees that it will not disparage or make any defamatory statement regarding any Plaintiff or Plaintiff Releasee in any respect, or make any comments concerning any aspect of their relationship or the conduct or events that precipitated any Plaintiff's separation from employment.  This includes any statement to or response to an inquiry by any member of the press or media, whether written, oral, or otherwise, and includes, without limitation, statements transmitted by electronic mail, text message, social media platform, or by any other means of communication, publication, or dissemination.

(c)     The rights afforded to the Parties under this Section are in addition to any and all rights and remedies otherwise afforded by law.  For such purposes, "statement" shall mean only those communications or statements made by the Parties themselves and not any employees of a Party.  Nothing in this provision shall be construed to prevent a Party from testifying truthfully under oath pursuant to a lawful court order or subpoena or otherwise responding to or providing disclosures required by law.

9.     **Neutral Reference.**  Brand New Start agrees to provide any prospective future employers of any Plaintiff with a neutral job reference for the Plaintiff about whom the inquiry is made. Brand New Start will provide such Plaintiff's prospective future employers with only the Plaintiff's dates of employment and last position held.

10.     **Construction.** This Agreement supersedes all previous agreements between any Plaintiff and Brand New Start, if any, with respect to the subject matter of this Agreement. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This Agreement shall be interpreted under the laws of the State of Georgia without regard to conflicts of law provisions. This Agreement is the result of arms' length negotiation between the Parties with full participation of their counsel. Although the initial draft was prepared by counsel for Plaintiffs as a convenience to the parties, the final Agreement reflects substantive participation of all Parties. The paragraph headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement. If any part of this Agreement is declared or determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, that part shall be excluded from this Agreement and the validity and enforceability of the remaining parts, terms, or provisions shall not be affected.

11.   **Admissibility/Retention of Court Jurisdiction.** The Parties intend for this Settlement Agreement to be enforceable, binding, and admissible in Court. The Parties agree that the Court shall retain jurisdiction over the Parties and this Agreement to enforce the provisions of this settlement until there has been full performance, including entry of the negotiated Consent Judgment, if necessary. The Parties and their attorneys each acknowledge that their respective obligations herein may be specifically enforced by the Court on noticed motion.

12.   **Entire Agreement; Amendments**.  This Agreement (and all of its Exhibits) constitutes the entire agreement between the Parties with respect to the subject matter.  The Parties acknowledge and agree that they have not relied upon any representations other than those set forth in this Agreement.  Any amendments to this Agreement shall be effective <u>only</u> if in writing and signed by all Parties.

13.   **No Waiver.**  No waiver of any provision of this Agreement shall be effective against any Party unless it is in writing and signed by the Party granting the waiver. No waiver of any provision hereof shall be deemed a continuing waiver or a waiver of any other provision.

14.   **Inadmissibility of Agreement as Evidence**. This Agreement may not be introduced as evidence in any legal proceeding against a Party, or otherwise used to establish any fact or admission of a Party, provided however, that any Party may introduce this Agreement into evidence for the purpose of enforcing its terms.

15.   **Counterparts.** This Agreement may be executed in any number of counterparts, such counterparts considered together shall constitute a single, binding, valid, and enforceable Agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or by electronic mail as a .pdf file shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile or by electronic mail as a .pdf file shall be deemed to be their original signatures for all purposes

16.   **Knowing and Voluntary Waiver. Each Plaintiff acknowledges and agrees on their own behalf that Plaintiff's waiver of rights under this Agreement is knowing and voluntary. Each Plaintiff further acknowledges that Plaintiff understands the terms of this Agreement; that the payments and other good and valuable consideration referred to in this Agreement exceed that to which Plaintiff would otherwise have been entitled; that the actual payment is in exchange for Plaintiff's release of the claims referenced in this Agreement; that Plaintiff has consulted with attorneys prior to executing this Agreement; that Plaintiff has consulted with an attorney in connection with the decision to enter into this Agreement, and that Plaintiff has been represented by counsel throughout Plaintiff's dealings with Brand New Start concerning this Agreement.**

IN WITNESS WHEREOF, the undersigned hereunto set their hands to this Agreement on the dates written below. This Agreement may be signed in single copy, multiple copies, single or multiple signature pages (for example with one party signing one

signature page and other parties signing other signature pages), and with original signature, photocopy signature, fax signature, or electronic signature permitted and accepted.

<u>SIGNATURES APPEAR ON FOLLOWING PAGES</u>

AGREED AND ACCEPTED:

_____
Namrata Pereira

Dated:__7. 24. 2019_____


AGREED AND ACCEPTED:

_____
Denese Faulkner

Dated:_____


AGREED AND ACCEPTED:

_____
Sarah Hilbert

Dated:_____


AGREED AND ACCEPTED:

_____
John Edward Widener II

Dated:_____


AGREED AND ACCEPTED:

_____
Brand New Start Treatment Centers, LLC

By:_____

Dated:_____


12

AGREED AND ACCEPTED:

_____
Namrata Pereira

Dated:_____


AGREED AND ACCEPTED:

_K Denese Faulkner_
Denese Faulkner

Dated:___7 / 25 / 2019___


AGREED AND ACCEPTED:

_____
Sarah Hilbert

Dated:_____


AGREED AND ACCEPTED:

_____
John Edward Widener II

Dated:_____


AGREED AND ACCEPTED:

_____
Brand New Start Treatment Centers, LLC

By:_____

Dated:_____

AGREED AND ACCEPTED:

_____
Namrata Pereira

Dated:_____


AGREED AND ACCEPTED:

_____
Denese Faulkner

Dated:_____


AGREED AND ACCEPTED:

_____
Sarah Hilbert

Dated:_____


AGREED AND ACCEPTED:

_____
John Edward Widener II

Dated:_____


AGREED AND ACCEPTED:

_____
Brand New Start Treatment Centers, LLC

By:_____

13

AGREED AND ACCEPTED:

_____

Namrata Pereira

Dated:_____

AGREED AND ACCEPTED:

_____

Denese Faulkner

Dated:_____

AGREED AND ACCEPTED:

_____

Sarah Hilbert

Dated:_____

AGREED AND ACCEPTED:

_____

John Edward Widener II

Dated: 7-23-19

AGREED AND ACCEPTED:

_____

Brand New Start Treatment Centers, LLC

By:_____

Dated:_____

AGREED AND ACCEPTED:

_____
Namrata Pereira

Dated:_____


AGREED AND ACCEPTED:

_____
Denese Faulkner

Dated:_____


AGREED AND ACCEPTED:

_____
Sarah Hilbert

Dated:_____


AGREED AND ACCEPTED:

_____
John Edward Widener II

Dated:_____


AGREED AND ACCEPTED:

_____
Brand New Start Treatment Centers, LLC

By:_____SunJAy  V.  Sood_____

Dated:_____7-26-19_____

12

AGREED AND ACCEPTED:

_____

Brand New Start Treatment Center – Paulding, LLC

By:_____ SunJAY   V.   Sooi_____

Dated:_____ 7 – 26 – 19 _____

AGREED AND ACCEPTED:

_____

Georgia Treatment Center, LLC

By:_____ SunJAY   V.   Sooi_____

Dated:_____ 7 – 26 – 19 _____

AGREED AND ACCEPTED:

_____

Woodstock Treatment Center, LLC

By:_____ SunJAY   V.   Sooi_____

Dated:_____ 7 – 26 – 19 _____

AGREED AND ACCEPTED:

_____

Walton County Treatment Center, LLC

By:_____ 7 – 26 – 19 _____

Dated:_____ SunJAY   V.   Sooi_____

13

AGREED AND ACCEPTED:

_____

Sunjay Sood

Dated: _____7 - 26 - 19_____

AGREED AND ACCEPTED:

_____

Nalini Singh

Dated: _____7/26/19_____

# EXHIBIT
# 1

**EXHIBIT 1**
**TO PARTIES' SETTLEMENT AGREEMENT**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| NAMRATA PEREIRA and DENESE FAULKNER, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 1:19-cv-01342-JPB |
| BRAND NEW START TREATMENT CENTERS LLC; BRAND NEW START TREATMENT CENTER - PAULDING, LLC; GEORGIA TREATMENT CENTER, LLC; WOODSTOCK TREATMENT CENTER, LLC; WALTON COUNTY TREATMENT CENTER LLC; SUNJAY SOOD; and NALINI SINGH, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## CONSENT JUDGMENT

It is stipulated by and between the undersigned parties, by their respective attorneys, that:

1.      Based on the Settlement Agreement between the parties, the terms of which are incorporated into this Consent Judgment in their entirety, in the event of a default by Defendants regarding the payment of the Gross Settlement Proceeds to Plaintiffs, as defined in the Settlement Agreement, which default has not been cured

**EXHIBIT 1**
**TO PARTIES' SETTLEMENT AGREEMENT**

within ten (10) days following notice of the default (which shall occur only in the event that such payments are not received by the twenty-fifth (25th) day of the month in which the payments are due), Defendants Brand New Start Treatment Centers, LLC, Brand New Start Treatment Center – Paulding, Georgia Treatment Center, LLC, Woodstock Treatment Center, LLC and Walton Country Treatment Center LLC, Sunjay Sood and Nalini Singh  (collectively "Defendants") consent to the immediate entry of this Judgment in favor of Plaintiffs and against Defendants, jointly and severally, for the sum of $220,000.00, less any Gross Settlement Proceeds amounts paid after the date of the Settlement Agreement. The Consent Judgment amount is comprised of Plaintiffs' entire claim for alleged unpaid wages and overtime, liquidated damages, attorneys' fees and expenses of litigation.  The Consent Judgment amount shall accrue post-judgment interest at a rate authorized by law from the date this Consent Judgment is entered.

3.     Except as between the parties in this action, nothing contained in this Judgment shall be construed as an admission of liability by Defendants who consent to the entry of this Judgment, based on the terms of the parties' Settlement Agreement in this action, which shall be binding and enforceable.

4.     Defendants shall have no right to oppose the entry of final judgment of this Court except upon presentation of sworn testimony and documentary evidence

**EXHIBIT 1**
**TO PARTIES' SETTLEMENT AGREEMENT**

concerning the correct amount of the judgment, or that Defendants have not defaulted on their payments to Plaintiffs pursuant to the terms of the Settlement Agreement.

5.      This Judgment is final for purposes of appeal.

Dated this ___ day of _____, 201___.

_____
UNITED STATES DISTRICT JUDGE